We'll turn to our next case on the docket, Walden v. The City of Duncan. 25-6153, Mr. Hammonds. Thank you, Your Honor. Members of the court, my name is Mark Hammonds. I represent Sean Walden, the appellate in this case. The central issue is whether or not the police officer who arrested him acted under color of municipal law, state action. This court had asked us to take special attention to four other decisions. It's Griffin v. Maryland, Romero v. Peterson, the first published decision, and then that same case on its second appeal, and then Dry v. The City of Durant. And those cases, I think, are illustrative and set out the parameters of what we needed to show and did show in this particular case. Griffin v. Maryland, in particular, contains a statement that is dispositive of the color of law issue. The court there said if an individual is possessed of state authority and purports to act under that authority, his action is state action. It is irrelevant that he might have taken the same action had he acted in a purely private capacity. That statement at the court in Griffin was repeated by the Supreme Court in West v. Atkins, and then again in Polk v. County of Dodson, and was repeated by this court in Dry v. The City of Durant, one of the cases that you asked us to look at. Now, in this case, there's no dispute that Officer Archer approached Mr. Walden as a City of Duncan police officer. He was dressed as one. That's how he appeared, all of his equipment, the cars, uniforms, everything that he acted with was from the City of Duncan. He continued in that throughout his encounter with Mr. Walden. The first time the tribal issue arose was after Mr. Walden had been booked into the Stevens County Jail in Duncan. And charged with state offenses. He was initially charged with state offenses. Thereafter, he was asked if he had a Native American card, and he did. And at that point in time, it was recognized that this was Indian land and that he was subject to the jurisdiction of the tribal court. And only at that point in time, after the arrest was complete, after the incarceration was complete, was an affidavit filed by the police officer for the tribal court. Now, the officer was cross-deputized, and the district court felt that a retrospective analysis should be used to say, well, he could have arrested him as a tribal officer, and he later did that affidavit, and therefore the arrest is valid under tribal law because he had the authority. But that's not the test. As a matter of fact, in Griffin, they emphasized that the question was, what authority was the individual initially purporting to exercise? Now, in terms of your complaint, are you complaining about anything that happened to him after he presented his tribal card? No. All the misconduct that you're complaining about precedes that. So we don't need to decide whether there's some sort of problem with your claim after the card was presented. No, the only claim was with the initial arrest and whether or not there was probable cause, an issue that the court did not reach because it decided that the police officer was not acting under color of law when he made the arrest. But a retrospective analysis is simply not consistent with what Griffin says. It's not consistent with what this court said in Romero v. Stevenson where it said you make that determination at the moment of the constitutional violation. This court has also said that in Howe v. City of Baxter Springs, although that is a non-presidential decision, but it's said very clearly that you make the decision about color of law at the time of the constitutional violation, not at some time thereafter. Well, Mr. Hammond, the Griffin case concerned a private security guard, correct?  And at least so far, I think your argument is that it's possible, given the circumstances of that case, for the defendant to be acting under color of state law even if he wasn't at the time exercising his actual authority as a police officer because he was a security guard. But that takes us into these other cases, and the question, I think, is why it's possible for an officer to exercise both actual authority, which Officer Archer was under tribal law, and apparent authority, which would be the under color of state law. Can you do that simultaneously? And so I'm really asking this as a segue to these other cases. Do they answer that question? Because I'm not sure Griffin gets you there. It doesn't get us all the way there, Your Honor. It does suggest that the critical inquiry is at the moment of the offense and not what happens thereafter. And I do recognize that if Officer Archer had said, I'm acting as a tribal officer and arresting you, done any of those things during the course of the arrest, then it would be a different question. But he didn't do any of that until afterwards. Well, let me, before you move off of that, so because Officer Archer could not legally arrest on Indian country this defendant, does the fact that he did not have actual authority affect how we view color of state law if he did have, quote, apparent authority? I'm not sure I caught your question exactly, Your Honor, but the dry case. Well, I think it's a variation of Judge Matheson's question, which is we have a situation here where he's dressed as the city officer and in a car and actually makes the arrest acting on behalf of the city. But the truth is he doesn't have any actual authority to make that arrest because of the circumstances where it occurred and who he arrests. How does that factor into our analysis of color of state law? Well, you know, actual authority doesn't make any difference for the color of law inquiry. In the dry case, there's a discussion by the court about apparent authority or acting without any actual authority as long as you appear or present yourself to have authority. And the court said, and it's, I think, really virtually black-letter law at this point in time, that what color of law is concerned with is the misuse of authority that you have or the use of authority you claim to have but do not have. The fact that you have authority is not part of that inquiry. The whole color of law issue arises usually because you don't have authority. Either you had an area of authority and you exceeded that, did more than you were supposed to, but you were still under color of law, or you didn't have any authority at all but acted as if you had the authority. It's a little more complicated than that. For apparent authority, at least in the usual law of agency, which I think the courts are applying here, the principle is not liable unless the principle does something to enable the agent to look like the agent has authority. So if someone, if in this case, the defendant just made up his own uniform and put some stickers on his car and said, I'm a city police officer, a county sheriff officer or something, and did this, there would not be apparent authority because there's nothing the principle did to give the apparent officer his authority. Here, that's not the situation. He was in a police car, in uniform, et cetera. But I think you're overstating what apparent authority can be, at least for common law agency purposes, and I suspect that's also true for color of law. Are you disagreeing with me on that? Well, a little bit, Your Honor, in the sense that we don't have an agency issue because it's only the police officer who's being sued for the constitutional violations. So he's acting under the authority he claims to purport. The city of Duncan is not being held liable for anything that he did except under state law, which is a different test under the Governmental Tort Claims Act. So his liability arises from his own actions. Now, he is vested with authority, and the issue is, you know, did he act in a constitutional fashion when he was doing and purporting to do the things that he was authorized to do by the city of Duncan? If it's a retrospective analysis, then that's a different thing. But do you think if someone just manufactured his own vehicle as a local law enforcement vehicle and put on a uniform, he could be liable under 1983? I don't know. I'll be honest with you. I've never even thought of a circumstance where the apparent authority was completely manufactured and had no source in reality. But that isn't the circumstance we're dealing with here today. Why is apparent authority – there's got to be a theory behind apparent authority allowing liability. And it's got to be because the state actually played a role in enabling this person to violate the law. Well, it is, but what this court said in the Dry Mercy of City of Duncan case is that whether or not the defendant lacked actual state authority is not determinative. As the Supreme Court has noted, if 1983 was designed to embrace only actions when the state in fact authorized – and the court emphasized those words – the words, under the cover of law or any law, were hardly apt words to express the idea. But the state has to be involved in some way. Well, I think that's true, and they were. The question is, did the authority of the state allow him to or cause Mr. Walden to submit to his jurisdiction and authority? And the facts on that are undisputed. Mr. Walden always thought he was a police officer, never had any idea that he was acting pursuant to tribal law. He submitted to the authority of the police officer because the police officer presented himself as a City of Duncan police officer. Not as anything else, but in that manner. And then he conducted an arrest, which we say did not meet constitutional standards, which you wouldn't get to if he was a tribal officer. It would be a different matter. But what does matter is that Mr. Walden's involvement in this, as the person being arrested, was that he is submitting to authority that is given to Archer and misused as a city police officer. He's not submitting to him as a tribal officer. The search, the arrest, everything that took place up to the point after the arrest is completed, he's incarcerated, is done as a state officer. Should we do the same thing here we did in Romero and clarify the factors the district court should have considered and remand? And that's possible because there are six factors in Romero. I think we would establish most of those factors, but some of them the record is not complete on. In Dry, the court suggested that both subjective factors, well, subjective factors on the part of the actor and subjective factors on the part of the plaintiff were relevant. Those are not expressly set out, although Archer admitted he approached as a police officer, never claimed to be anything else. And I think those actions speak to his subjective state of mind. Walden did testify as to his subjective state of mind, as Dry indicated, and said, I thought he was a city police officer. That's what I always thought. Could I just ask you, does Mr. Walden have a remedy in tribal court if his arrest was unlawful? Only the dismissal of the charges, which is what happened. So no recourse, no recourse as an alternative to 1983? None that I know of. I don't think there's any equivalent of a federal tort claims act like an Indian tort claims act that applies. None that I know of, Your Honor. Thank you. Thank you, Counsel. Mr. Hendrickson? Good morning, Your Honors. May it please the court, Jeffrey Hendrickson for Defendant Appellee, City of Duncan, and Officer Christian Archer. Your Honors, I wasn't intending to start out this way, but I think a hypothetical might be useful to drive home the point between actual and apparent authority. If I had gotten up this morning and instead of put on this suit and come to speak to you, I had instead put on a uniform of the Denver Police Department, and I had walked outside, and I had placed one of my fellow citizens under arrest out in front of the courthouse, and the entire time I was wearing a Denver Police Department uniform, and I had a badge, and I told him, I'm with the Denver Police Department, and you're under arrest, and I'm going to take you down to wherever it is the Denver Police Department takes people they arrest. I might be kidnapping this person, and I might go to jail, but I think it is almost without question that I would not be acting as an officer of the Denver Police Department, and that I would not be acting with the authority granted by the Denver Police Department. And if this individual turned around and sued me in civil court, there might be a number of reasons that I would lose, but one of them would not be because I was acting under the color of state law, and I was exercising state authority, and certainly the Denver Police Department and the City and County of Denver would think that as well. So what does it take for apparent authority? You admit that color of law can be based on apparent authority, do you not? Judge Hart, I do actually don't necessarily agree with that position. I think under Section 1983, principles, common law principles of respondeat superior are not necessarily always used in making determinations, and one of the best examples of that is to have a claim against a municipality under Section 1983, you have to allege that that municipality itself did something wrong by virtue of a policy or custom. It's not sufficient to say that the officer that you employed violated the Constitution, and thereby you are responsible as well. So with respect to the application of these common law principles of agency law, I don't necessarily agree that they cleanly apply to this situation, and I think that that is for a couple of reasons, and the first and foremost is from the line of cases that this court has directed the parties to be prepared and familiar with to discuss, Griffin v. Maryland, Romero v. Peterson 1 and 2, and then the drive-thru city of Durant. I think all of those express at their core. Counsel, before you jump into those cases, let me throw one other at you. We have a case from 1995, Tijola v. Chavez, and in that case the panel said that the authority with which the defendant is allegedly clothed may be either actual or apparent. It seems to me you're arguing against circuit law right now. Your Honor, I will posit that either under actual or apparent authority the defendant should prevail, and I'm happy to walk through the discussion of apparent authority as it was laid out in Drive-Thru City of Durant and Romero v. Peterson. I'm not saying that what we're asking for, the ruling we're asking for today, seeks an overruling of three or four different cases, including Tijola, potentially Ross v. Neff. That's not what I'm saying. What I am saying is the point of actual authority is so fundamentally more critical to the analysis than apparent authority ever should be, and I think that's most clearly expressed by the Drive-Thru City of Durant case that we were directed to brief and be familiar with, and in that case the fundamental component that this court found dispositive was the fact that those officers had no state authority. Now, beyond that, it also— That's what they ultimately found, but the panel said that an officer's actual authority under state law is not determinative on whether the officer acted under color of state law. Certainly, Judge Matheson, and my point in saying— and I kind of harken back to the Griffin v. Maryland, the way that it asserted what the test for under color of state law is, and that same expression in West v. Aikens, that if an individual is purported— if an individual is possessed of state authority and purports to act under that state authority, that action is state action. My central point is that very first question, possessive state authority, does not exist in this case. And what Griffin goes on to talk about is it's irrelevant if the act could have been done by the officer in a private capacity or if it was later said to exceed or not be authorized by the state, but I think that requires context. Certainly, the case is that an officer cannot argue, I wasn't acting under color of state law when I went and violated this individual's constitutional rights because I used excessive force. The argument that they can't make is, it wasn't within my authority to use excessive force. That's not what the color of state law test is. Color of state law looks at, do you have the power, and did you misuse the power? And the fundamental point that the appellees are making here is that power never existed in the first place with respect to Officer Archer over Mr. Walden, and that's because Mr. Walden was a member of the Choctaw tribe. Well, let me ask you this then. If Officer Archer had not been cross-deputized by the Chickasaw Nation, could Mr. Walden proceed with his 1983 claim? Judge Matheson, I think that's a real tension, and I think Ross V. Neff certainly suggests that it's possible that he could proceed with the Section 1983 claim if the cross-commissioning did not exist. However, there's a couple key points on that. In Ross V. Neff, the panel went out of its way to make clear that one of the things that did not exist in that case was a cross-commissioning agreement, and it suggested specifically that there was no evidence that the police chief in Adair County had the ability to extend authority into tribal jurisdictions via a cross-commissioning agreement by way of suggesting that had a cross-commissioning agreement existed, this might be a different analysis. So under Ross V. Neff, Judge Matheson, you've identified an accurate tension in the law, but I think the reality is that a cross-commissioning agreement in this case did exist, and it vested Officer Archer with the only set of authority that was actually legally applicable. Well, okay, but taking this back, I think, to the point you've been trying to make is even without the cross-deputization, given it's on Indian country, given that Mr. Walden is Indian, Officer Archer still would not have actual state authority to make the arrest. And yet you're saying that there can still be a 1983 claim, but the only way that's going to happen is if he was exercising apparent authority under colored state law. Judge Matheson, I think the key point is the existence of the cross-commissioning agreement establishes the authority that he can act under, and when there is authority that is valid and legitimate, what tribal authority was in this case whereas state law authority was not, there is no line of cases that stands for the proposition that an officer could be acting under both. Ah, that takes us to the cases we asked you to look at.  So why doesn't, I mean, wasn't that precisely what we did in Romero I as we remanded for the court to examine that very issue? Because the officers were employed by the tribes. That's true. And so they had actual authority, right, under tribal authority, and yet the door was still open to find that they acted under color of federal law for purposes of the Bivens action. So it seems the court was at least suggesting that those officers could simultaneously act under BIA apparent authority and actual tribal authority. Now, at the end of the day, after Romero II, the decision was, well, they only really, there wasn't enough for under color of. But why wouldn't we read the case that way? Respectfully, Judge Matheson, I think that the question that Romero was deciding was between two sources of valid authority and which one would apply. In fact, in the briefing in Romero I, one of the points that was made by the officers was if they did have federal authority, then what should have been done in that case is that the appellant plaintiff should have brought the claim under the Federal Tort Claims Act. And so the difference between applying that assessment in Romero to the facts of this case is in Romero, certainly the officers were employed by the Pueblo of Pucuris tribe, and the question in that case was a decision between two sources of valid, legitimate authority. If the BIA had cross-commissioned those officers and if there were other indicia of the BIA's continued involvement in that area, then it's certainly possible that those officers could have been found to be federal officers in that case. But the point is they were deciding between one of two sets of valid authority. If the officers were able to act under dual authority, then every line of cases, or every case that we've talked about thus far, would have been doing a superfluous analysis. The question would have been, well, did they have that authority in some semblance? Yes, they did. Okay, well, then they can be sued there or they can be sued here. Whoa, whoa, whoa, wait a minute. Can they be sued in tribal court? Well, Your Honor, I'm not aware of that. I don't know that there is a— Well, you just said they could be sued here or they could be sued there. Can they be sued there? Well, in the Romero case, the reason that Romero 2 didn't proceed was because it was declared that the officers had sovereign immunity by virtue of the tribes. I didn't—that's not the question. Is there a remedy here? Is there a remedy here for Mr. Walden if we agree with you? Judge Matheson, on its face, the remedy is going to have to come from Congress. It is clear that the— So the answer is no? The answer is no in terms of Section 1983. Well, no, I didn't ask about 1983. Is there some other recourse that Mr. Walden would have? Your Honor, there is a possible set of recourse that could be available to Mr. Walden under the Federal Tort Claims Act, which— No, no, no, in tribal court. Your Honor, I am not aware of any particular recourse in tribal court that Mr. Walden could have with respect to you, Officer Archer. But the point overall is the outcome of this case should not be dictated by whether there is a remedy or not because in reality, the remedy should come from Congress in the form of amending— Well, why doesn't that question shed some light on how we should interpret the interplay between, under color of state law, on the Federal side here, or I guess it's the state side, with Officer Archer and the actual tribal authority that he was exercising? Judge Matheson, I don't think it illuminates it because the law with respect to what authority was active at the time is what controls. And so with respect to the availability of a remedy or not, when the law is clear as to what authority was legitimate and what authority is not, that's what should drive the outcome. So your reading of Romero, it's either or? That is our reading of Romero, is that it's either or. And I want to just say a little bit more about the remedies question in this context. When it comes to Section 1983, in the 1970s, in the Supreme Court case, District Court of Columbia v. Carter, the Supreme Court itself held that there was no Section 1983 claim available to the petitioner in that case, specifically because the text of Section 1983 did not list the District of Columbia, and the Supreme Court found that the District of Columbia was not a state or a territory. And so in that case, the Supreme Court ruled that there was no Section 1983 claim available. What's that case again? D.C. v. Carter. And if you'll give me a second, I can give you the actual citation. It's D.C. v. Carter. I promise you it's there. I have a question. If our City of Duncan police officer went into Oklahoma City, where he lacked jurisdiction, and went into a home there without a warrant and arrested someone, is it your position that there would not be a 1983 remedy for that person because he was in the wrong city when he did it? Judge McHugh, no. That is not our position. I think there would be a 1983 remedy, but that gets to the point.  Because he is— He doesn't have any actual authority to do that, does he? Well, as a state law officer, as an officer of the City of Duncan, but it's a political subdivision of the State of Oklahoma, that would be the scope of, I believe, that would get into the question of a misuse of lawfully granted authority in the sense that it's clear from law— Well, you'd agree he has no authority to make an arrest in the other city? I would agree that that would be an unlawful use of power granted to him as a law enforcement officer in the State of Oklahoma, which would be different than the line of cases that say, from Ross V. Neff and McGirt v. Oklahoma, that the state has no jurisdiction at all to prosecute crimes against Native Americans on Native American territory. Well, I agree with you that the entering the home without a warrant is the offense that wouldn't really affect where you do it. But if he only has authority to make arrests in the City of Duncan, which is my hypothetical— And let's say he goes across state lines. I mean, and he does it in his Duncan City police officer uniform with a car or says, I'm arresting you as an officer of the City of Duncan, and he takes him and he puts him in jail in the City of Duncan, and he charges him with a City of Duncan violation. Is there no remedy under 1983, under your analysis? Judge McHugh, I think that the remedy would likely be a Section 1983 action, but the difference, again, with respect to this— And I assume the individual in your hypothetical is not a Native American, but the difference there is the weight of authority starting with Ross and ending with McGirt is there's no criminal jurisdiction whatsoever with respect to Native Americans on tribal land. And so that's— Does the City of Duncan, Oklahoma, officer have any jurisdiction whatsoever if he goes over to Colorado and makes an arrest? I'm not aware of any, Your Honor. So, but you're saying it's still—you would have a 1983 cause of action there. I think it's possible. I think the existence of the cross-commissioning agreement is the key fact that takes this case from kind of the hypotheticals that are being provided. Your Honor, see, I'm out of time. I would just urge the Court to affirm the district court's order. Thank you. Thank you, counsel. Does Appellant have any more time? Two seconds, Judge. You can take 30. All right. Thank you. Your Honor, the argument that we were getting into at the end is whether or not you can act under dual authority, which Bresley in the Ninth Circuit said you could. And under the common law of torts, which is the background for Section 19 to 83 action, it's well established that you can act under dual authority. And I've found no cases that have rejected that in the constitutional sphere. It would seem to me to make sense that if you have color of law as a tribal authority and color of law as a state, that you are acting under a dual authority and it doesn't foreclose a color—it doesn't foreclose a 1983 action. The question becomes, under which set of circumstances or authority did you cause the injured party to submit to your jurisdiction? And in this case, it's clear. Only the authority granted by virtue of his employment with the city of Duncan caused Mr. Walden to submit to the authority of the police officer. The tribal issue was never a part of that until after the constitutional wrong had been completed. Thank you. Thank you. Thank you. Council, case is submitted.